FANTASY WORLD, INC., Petitioner v. GREENSBORO BOARD OF ADJUSTMENT and CITY OF GREENSBORO, Respondents

No. COA03-52

(Filed 17 February 2004)

**1. Zoning— privilege license—zoning compliance required**

The City of Greensboro had the authority to deny a business privilege license to an adult business based on zoning determinations by the tax collector. The City may require evidence of compliance with applicable laws before approving an application for a privilege license, and the City charter provided the authority to delegate zoning compliance assessment to the tax collector.

**2. Zoning— denial of privilege license—appeal to board of adjustment**

The Greensboro City Charter and ordinances properly gave the Board of Adjustment the authority to hear appeals from the denial of a business privilege license.

**3. Collateral Estoppel and Res Judicata— prior motions to show cause and for permanent injunction—denial not on the merits**

Res judicata and collateral estoppel did not bar the City of Greensboro from asserting that a company was violating local zoning ordinances as the reason for denying a privilege license. The denial of a prior motion to show cause was not on the merits, and a permanent injunction was denied based on lack of jurisdiction.

### 4. Zoning— amended ordinances—applicability

There was competent evidence for findings and conclusions that amended development ordinances were applicable to a petitioner engaged in a longstanding dispute with the City of Greensboro over the operation of adult businesses.

### 5. Zoning— adult business—zoning violations

There was competent and sufficient evidence to support findings and conclusions that petitioner violated the city's zoning requirements in its operation of adult mini-motion picture booths.

### 6. Constitutional Law— adult business—privilege license denied—not a prior restraint on free expression

The denial of a privilege license for an adult business pursuant to a zoning ordinance was not an unconstitutional prior restraint of free expression.

Appeal by petitioner from judgment entered 2 May 2002 by Judge W. Douglas Albright in Guilford County Superior Court. Heard in the Court of Appeals 15 October 2003.

*Loflin & Loflin, by Thomas F. Loflin III; and Sirkin, Pinales, Mezibov & Schwartz, L.L.P., by H. Louis Sirkin and Jennifer M. Kinsley for petitioner-appellant.*

*Office of the City Attorney, City of Greensboro, by A. Terry Wood, Becky Jo Peterson-Buie, and Clyde B. Albright, for respondents-appellees.*

LEVINSON, Judge.

Petitioner-appellant Fantasy World, Incorporated, appeals from a superior court order upholding a decision by the City of Greensboro, North Carolina to deny the company a business privilege license. We affirm.

I.

The present appeal arises out of a lengthy dispute between the parties over the legality of Fantasy World's use of the building located at 4018 West Wendover Avenue in Greensboro, North Carolina. Prior to 1994, the building housed two separate types of commercial enterprises. A "topless" bar occupied one portion of the building, and a space, which had formerly been a restaurant that was not a sexually oriented business, occupied the other portion. Petitioner-appellant

Fantasy World took possession of both portions of the building sometime before June 1994.

On 15 June 1994, the City issued a license to Fantasy World to operate a business at the location. Fantasy World continued to use the "topless" bar portion of the building for live adult entertainment and subsequently sought to use the former restaurant space for lingerie sales. On 1 September 1994, the Greensboro Planning Department attached a note to the building plans specifying that no adult entertainment would be permitted in the former restaurant portion of the building. Adult-oriented uses of the former restaurant space were prohibited because the topless bar was a legal "nonconforming use" and a City development ordinance did not permit non-conforming uses to be "enlarged, increased, or extended to occupy a greater area of land or floor area[.]" Greensboro Code of Ordinances § 30-4-11.2.

Following visits to the property by zoning enforcement officers, the Greensboro Zoning Enforcement Division issued a Notice of Violation to Fantasy World on 27 December 1994, instructing the business to cease all adult sales and use of the "adult mini-motion picture theater" on the premises because (1) such uses did not comply with the development ordinance requiring a five hundred foot spacing from residentially zoned property and a twelve hundred foot spacing from another adult use, or alternatively (2) such uses violated the ordinance prohibiting enlarging, increasing, or extending a non-conforming use to occupy a greater floor area. The Greensboro Zoning Board of Adjustment upheld the Notice of Violation.

The superior court heard the matter on a petition for *certiorari* pursuant to N.C.G.S. § 160A-388(e). Judge Ben F. Tennille issued an order affirming the Board of Adjustment on 18 July 1996. Judge Tenille ruled that sufficient evidence existed for the Board to conclude that Fantasy World was operating an "adult mini motion picture theater," which constituted a violation of the prohibition against enlarging, increasing, or extending a nonconforming use. This Court affirmed Judge Tennille's order in *Fantasy World, Inc. v. Greensboro Bd. of Adjustment*, 128 N.C. App. 703, 496 S.E.2d 825, *disc. review denied*, 348 N.C. 496, 510 S.E.2d 382 (1998).

On 25 September 1998, the City filed a motion requesting the superior court to issue an order requiring Fantasy World to show cause why it should not be held in contempt for violating Judge Tennille's order. Judge Henry E. Frye, Jr., denied this motion. In an

unpublished opinion, *Fantasy World, Inc. v. Greensboro Board of Adjustment*, COA99-438, slip op. at 5 (N.C. App. Mar. 7, 2000), this Court vacated Judge Frye's order denying the City's motion to show cause, and directed him to clarify whether his decision was based on the merits of the controversy. On 19 June 2000, Judge Frye entered an order stating that his denial of the City's motion to show cause had not been a decision based on the merits.

On 10 November 1998, after an appeal of Judge Frye's initial order had been perfected, the City filed a motion for a permanent injunction in superior court, requesting that Fantasy World be ordered to comply with the City's development ordinance and to cease operation of an "adult mini motion picture theater" establishment at 4018 West Wendover Avenue. On 20 January 1999, the superior court ruled that it was without jurisdiction to issue the injunction because N.C.G.S. §. 1-294 stayed further proceedings while Judge Frye's order was on appeal.

The 27 December 1994 Notice of Violation cited Fantasy World for operating an "adult mini motion picture theater" at 4018 West Wendover. The City Code defined the term "adult mini motion picture theater" to mean a mini motion picture theater in which "a <u>preponderance</u> of [the movies shown were] distinguished or characterized by an emphasis on matter depicting, describing, or relating to specified sexual activities or specified anatomical areas." Greensboro Code of Ordinances § 30-2-2.7 (definition deleted 17 April 1995) (emphasis added). The court proceedings between 1996 and 2000, including the two previous appeals heard by this Court, were based on the 27 December 1994 Notice of Violation employing the "preponderance" of materials test.

Sometime prior to 2000, the City replaced many of its definitions relating to adult entertainment with new definitions. Specifically, the City defined the term "sexually oriented business" to include "adult arcades" and "adult bookstores," which were further defined as follows:

(1) Adult arcade (also known as "peep show"). Any place to which the public is permitted or invited, wherein coin-operated or token-operated or electronically, electrically, or mechanically controlled . . . motion picture machines . . . are maintained to show images to persons in booths or viewing rooms where the images so displayed depict or describe specified sexual activities and/or specified anatomical areas.

(2) Adult bookstore or adult video store. A commercial establishment which as one (1) of its principal business purposes offers for sale or rental, for any form of consideration, any one (1) or more of the following:

   a. Books, magazines, periodicals or other printed matter, or photographs, films, motion pictures, video cassettes or video reproductions, slides, or other visual representations that depict or describe specified sexual activities and/or specified anatomical areas; or

   b. Instruments, devices, or paraphernalia that are designed for use in connection with specified sexual activities.

Greensboro Code of Ordinances § 30-2-2.7. The Greensboro development ordinances were amended to prohibit the location of a "sexually oriented business" within one thousand two hundred feet of another "sexually oriented business." Greensboro Code of Ordinances § 30-2-2.73.5.

In 2000, Fantasy World submitted an application for a business privilege license to the City tax collector. The application requested a license for a business operating under the name "Xanadu" at 4018 West Wendover Avenue to engage in business associated with retail sales, amusement machines, sale of sundries, and movie sales and rentals. The tax collector visited the business and, by letter dated 14 September 2000, denied Fantasy World's application for a privilege license to operate Xanadu. The letter indicated that the tax collector himself had made the determination that the business was a sexually oriented business, as defined by the amended City development ordinances. The letter further indicated that the tax collector had determined that Fantasy World's operation was in violation of the City's zoning requirement that sexually oriented businesses be at least one thousand two hundred feet apart because it was "under the same roof as" and had "an entry door . . . not more than ninety feet from" another business which the tax collector had determined to be a sexually oriented business. On the basis of this determination, the tax collector denied the privilege license. The letter indicated that the tax collector's decision could be appealed to the City's Zoning Board of Adjustment.

Fantasy World's appeal was heard by the Greensboro Zoning Board of Adjustment in October and November of 2000. At the hear-

ings, the City introduced evidence of inspections of Fantasy World conducted by City Zoning Officers in 1995, 1998, and 2000. The inspection reports showed that sometime in 1998, Fantasy World began offering the option of viewing sixteen "general release" films and fifteen "sexually oriented films" in their mini motion picture theaters. Fantasy World did not call any witnesses to testify at the hearing. The Board made findings of fact and concluded that the tax collector had properly denied Fantasy World's business privilege license on the grounds that its business at 4018 West Wendover Avenue was not in compliance with the City's current zoning requirements applicable to sexually oriented businesses.

Fantasy World filed a petition for *certiorari* in superior court pursuant to N.C.G.S. § 160A-388(e) seeking review of the decision by the Board of Adjustment. Following a hearing on the petition, Judge W. Douglas Albright concluded that the Board's decision was supported by competent, material, and substantial evidence and was not the result of an error in law, and entered an order affirming the Board. From this order, Fantasy World appeals.

II.

The trial court's order was entered pursuant to petitioner's appeal from a zoning board of adjustment, which upheld the decision of the City tax collector. A trial court's review of a zoning board of adjustment is as follows: "Every decision of the [zoning] board [of adjustment] shall be subject to review by the superior court by proceedings in the nature of certiorari." N.C.G.S. § 160A-388(e) (2003). The trial court sits as an appellate court and its scope of review includes:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross examine witnesses, and inspect documents,

(4) Insuring that decisions of . . . boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

*Fantasy World, Inc. v. Greensboro Bd. of Adjustment*, 128 N.C. App. 703, 706-07, 496 S.E.2d 825, 827 (citation omitted), *disc. review denied*, 348 N.C. 496, 510 S.E.2d 382 (1998).

On an appeal to this court from a superior court's review of a municipal zoning board of adjustment, the standard of review is limited to "(1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment*, 140 N.C. App. 99, 102-03, 535 S.E.2d 415, 417, (2000), *aff'd*, 354 N.C. 298, 554 S.E.2d 634 (2001). The scope of our review is the same as that of the trial court. *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs*, 299 N.C. 620, 627, 265 S.E.2d 379, 383 (1980). Questions of law are to be considered by both the superior court and by this Court *de novo*. *Westminster Homes, Inc.*, 140 N.C. App. at 103, 535 S.E.2d at 417.

III.

[1] We first address Fantasy World's contention that the City lacked the authority to deny it a privilege license based on zoning determinations made by the City tax collector. Given the facts and circumstances of the present controversy, we conclude that the City possessed the authority to allow the City tax collector to assess zoning compliance as part of the administration of the privilege license tax and to deny Fantasy World's privilege license on this basis.

"The law is well-settled that a municipality has only such powers as the legislature confers upon it." *Homebuilders Ass'n v. City of Charlotte*, 336 N.C. 37, 41, 442 S.E.2d 45, 49 (1994) (citation and internal quotation marks omitted). In determining what authority a municipality possesses, "the powers granted [to a municipal corporation] in [its] charter will be construed together with those given under the general statutes." *Laughinghouse v. City of New Bern*, 232 N.C. 596, 599, 61 S.E.2d 802, 804 (1950) (citation and quotation marks omitted). "[T]he provisions of [N.C.G.S.] Chapter [160A] and of city charters shall be broadly construed and grants of power shall be construed to include any additional and supplementary powers that are reasonably necessary or expedient to carry them into execution and effect. . . ." N.C.G.S. § 160A-4 (2003). "[Our courts] treat [160A-4] as a legislative mandate that we are to construe in a broad fashion the provisions and grants of power contained in Chapter 160A." *Homebuilders Ass'n*, 336 N.C. at 44, 442 S.E.2d at 50 (citation and internal quotation marks omitted).

The Legislature has conferred upon the City the authority to impose a privilege license tax on businesses and the authority to regulate land use through zoning. N.C.G.S. § 160A-211 (2003) (privilege license tax); Greensboro City Charter ch. IV, § 4.61 (privilege license tax); N.C.G.S. § 160A-381(a) (2003) (zoning); Greensboro City Charter ch. V, § 5.61 (zoning). In addition, N.C.G.S. § 181.1(c) (2003) explicitly permits a municipality to regulate sexually-oriented businesses through local zoning ordinances.

The City has elected to exercise its taxation powers by enacting an application procedure for obtaining a privilege license, Greensboro Code of Ordinances § 13-36; and a prohibition against operating a business without a privilege license where required, *id.* § 13-32. The City has elected to exercise its land use powers to, *inter alia*, prohibit the location of sexually oriented businesses within one thousand two hundred feet of other sexually oriented businesses, or within five hundred feet of residential neighborhoods. *Id.* § 30-2-2.73.5. Furthermore, the City has enacted an ordinance providing its tax collector with the limited authority to assess zoning compliance before issuing a privilege license:

> If it shall be made to appear to the tax collector and the tax collector shall determine that any licensee or applicant for a [privilege] license is conducting or desires to conduct a business activity pursuant to his privilege license which activity would be in violation of any provision of [the City development ordinances] with respect to permitted and prohibited uses . . . he shall:
>
> (1) Refuse to issue a license to such applicant and so notify him in writing.

Greensboro Code of Ordinances § 13-48. The foregoing ordinance places initial zoning compliance determinations concerning business privilege license applicants in the hands of the tax collector. The present appeal raises a question as to whether the City may give the tax collector this authority.

The privilege license is not a regulatory license of the sort which municipalities may issue pursuant to N.C.G.S. §§ 160A-194 and 181.1(c). Rather, "[t]he privilege license tax is a revenue-generating measure and should not be used to regulate otherwise legitimate business." William A. Campbell, North Carolina City and County Privilege License Taxes 2 (Institute of Government 5th ed. 2000); *see also* G.S. § 160A-211 (located within Article 9 of Chapter 160A, titled "taxa-

tion"). Therefore, although the power to impose a privilege license tax must be construed broadly to include incidental powers, G.S. § 160A-4, the privilege license tax, standing alone, is only a tax and does not carry with it any powers wholly unrelated to its imposition or administration.

"The power to impose a tax . . . include[s] the power to provide for its administration[.]" N.C.G.S. § 160A-206 (2003). The power to administer the privilege license tax includes the authority to require that an application for a privilege license be submitted. *See* Campbell, *supra*, at 2, 45. This application may include questions designed to gather general information about an applicant. *See id.* at 45. Before approving an application, a municipal taxing authority may require that an applicant provide evidence of compliance with applicable law. *See id.* at 3. It follows that a city may require proof that a determination of appropriate usage has been made by the proper zoning authority before issuing a privilege license.[1] Thus, a city may, as part of the administration of the privilege license tax: (1) require that an applicant submit documentation issued by zoning authorities, (2) permit a municipal taxing authority to refer the matter to municipal zoning officials, and/or (3) afford the taxing authority the freedom to make inquiries of zoning officials concerning whether an applicant's business complies with applicable laws.

In the instant case, in addition to the powers which generally accompany the privilege license tax, the City is given the following authority in its Charter:

The Council may create, combine, consolidate and abolish; <u>may assign functions to</u>; and may organize as it sees fit the work of:

(1) Other offices and positions in addition to [mayor, mayor pro tem, city manager, city clerk, city treasurer, city attorney, chief of police, <u>tax collector</u>, fire chief, and building inspector]; and

(2) Such departments, boards, commissions and agencies as it deems appropriate.

Greensboro City Charter ch. IV, § 4.01(b) (emphasis added). This Charter provision provides the City with the authority to designate zoning compliance assessment responsibilities to its tax collector.

---

1. For a discussion of this issue, see *Mom N Pops, Inc. v. Charlotte*, 979 F.Supp. 372, 385 (W.D.N.C. 1997) (ruling that a city's practice of referring all privilege license applicants to the city zoning administrator did not convert the privilege license into a regulatory scheme), *aff'd*, 162 F.3d 1155 (4th Cir. 1998).

Accordingly, the City possesses the authority to require its tax collector to assess a privilege license applicant's zoning compliance as part of the administration of the privilege license tax. The City validly exercised this authority in Greensboro Ordinance § 13-48.

Fantasy World contends that this consolidation of privilege license tax administration and zoning administration is a violation of State law. Specifically, Fantasy World argues that the denial of a business privilege license is not a valid remedy for enforcing local zoning ordinances because N.C.G.S. § 160A-175, which sets forth the exclusive ordinance-enforcement remedies available to cities, does not contain the authority to deny a privilege license. We are unpersuaded by this argument.

N.C.G.S. § 160A-175(a) (2003) provides "[a] city shall have power to impose fines and penalties for violation of its ordinances, and may secure injunctions and abatement orders to further insure compliance with its ordinances . . . ." As an initial matter, we note that the denial of a privilege license is, at best, an indirect method of zoning ordinance enforcement and is, therefore, to be distinguished from the remedies set forth in G.S. § 160A-175, which provide for direct enforcement of city regulatory ordinances. Moreover, it is unnecessary to analyze the instant case under G.S. § 160A-175 because we conclude that the City possessed the authority to deny Fantasy World's privilege license on the basis of zoning non-compliance pursuant to the power to administer the privilege license tax. In administering the privilege license tax, the City had the authority to require confirmation of Fantasy World's zoning compliance and the authority to reject Fantasy World's privilege license application where zoning compliance was found wanting.

This assignment of error is overruled.

IV.

[2] We address next Fantasy World's argument that N.C.G.S. § 160A-388(b), which empowers local zoning boards of adjustment to hear zoning appeals, does not confer jurisdiction upon the Greensboro Zoning Board of Adjustment to hear an appeal from the denial of a business privilege license. We do not agree.

The North Carolina General Statutes confer the following appellate authority on a city zoning board of adjustment:

The board of adjustment shall hear and decide appeals from and review any order, requirement, decision, or determination

made by <u>an administrative official charged with the enforcement of any ordinance adopted pursuant to this Part</u> [zoning]. . . . [T]he <u>board shall have all the powers of the officer from whom the appeal is taken.</u>

N.C.G.S. § 160A-388(b) (2003) (emphasis added). The Greensboro City Charter authorizes the City to make the tax collector an official charged with assessing zoning compliance. Greensboro City Charter ch. IV, § 4.01(b). The City has elected to exercise this authority by enacting an ordinance which provides that if the City tax collector denies a privilege license on the basis of an alleged zoning violation, the Zoning Board of Adjustment must hold a hearing and make a final determination with respect to any zoning violations. Greensboro Code of Ordinances § 13-48(b). Thus, the Greensboro Zoning Board of adjustment had jurisdiction to hear an appeal taken from the municipal tax collector's denial of Fantasy World's privilege license based upon his assessment that the business was in violation of local zoning laws.

This assignment of error is overruled.

V.

[3] We next address Fantasy World's argument that Greensboro is barred from asserting that the company is violating local zoning ordinances by the doctrines of *res judicata* and collateral estoppel. This contention lacks merit.

In asserting claim and issue preclusion, Fantasy World relies on the superior court orders denying the City's motion to show cause and denying the City's motion for a permanent injunction. However, neither order amounts to a final judgment on the merits of any issue or claim involved in the present suit, as is required for *res judicata* or collateral estoppel to apply. *See Thomas M. McInnis & Assocs., Inc. v. Hall*, 318 N.C. 421, 429, 349 S.E.2d 552, 557 (1986) (setting forth elements of each doctrine). The superior court indicated that its order denying the City's motion to show cause was not on the merits, and the order denying the City's motion for a permanent injunction was based on a lack of jurisdiction.

This assignment of error is overruled.

VI.

[4] We next address Fantasy World's argument that the City erroneously classified Fantasy World's business as a "sexually oriented

business" as the term is defined in Greensboro Code of Ordinances § 30-2-2.7, set forth *supra* at 606-07, 592 S.E.2d at 208, because the business became a legally existing non-conforming use prior to the enactment of the definition the City seeks to apply. The gravamen of this argument is that there is no competent record evidence that the business had not come into compliance with previously existing zoning requirements applicable to adult businesses. *See* Greensboro Code of Ordinances § 30-4-11.2 (permitting continuation of legally existing non-conforming uses). We do not agree.

At the hearing before the Board of Adjustment, a zoning enforcement officer testified that he had inspected Xanadu in 1998 and on September 6, 2000; he described the materials found on the premises on both occasions, which included mostly adult-oriented materials and products, and stated that the premises was essentially the same on both occasions. Moreover, a 1998 report prepared by zoning officers indicated that, although each motion picture viewing booth which was inspected purported to offer one additional "general release" film than "adult content" film, some of the listed "general release" films were not available for viewing. Moreover, nothing in the record indicates that the City ever determined that Fantasy World's present use of 4018 West Wendover Avenue was in full compliance with past or current City development ordinances applicable to sexually oriented businesses.

Thus, there is competent record evidence to support the Board's findings, which in turn support the Board's conclusion that the City's amended development ordinances are applicable to Fantasy World. This assignment of error is overruled.

VII.

[5] We address next Fantasy World's argument there was insufficient evidence presented to the Greensboro Zoning Board of Adjustment to support its conclusion that Fantasy World's business at 4018 West Wendover Avenue violated the City's development ordinances. We disagree.

The function of the reviewing court is "to determine whether the findings of fact made by the Board [of Adjustment] are supported by the evidence before the Board and whether the Board made sufficient findings of fact." *Shoney's v. Bd of Adjustment*, 119 N.C. App. 420, 421, 458 S.E.2d 510, 511 (1995) (citation and quotation marks omitted).

When the specific issue raised on appeal to this court is whether a Board's decision was supported by competent, material and substantial evidence, our Supreme Court has further held that this court is to inspect all of the competence evidence which comprises the "whole record" so as to determine whether there was indeed substantial evidence to support the Board's decision. Substantial evidence is that which a reasonable mind would regard as sufficiently supporting a specific result.

*Appalachian Outdoor Adver. Co., Inc. v. Town of Boone Bd. of Adjustment*, 128 N.C. App. 137, 140, 493 S.E.2d 789, 792 (1997) (internal citations omitted).

In the present case, the record upon which the Greensboro Board of Adjustment based its decision contained a report prepared by Zoning Enforcement Officers Barry Levine and Richard Parham following a visit to Fantasy World's business on 18 October 2000. That report contained the following information:

On entering, we observed a cubicle with lingerie for sale on the left and the customer service counter on the right. Once inside we observed sexually oriented video tapes for sale on the side, rear wall and on three display racks in the middle of the room. We also observed sexually oriented magazines on the walls and stacked on the floor. We also observed erotic devices and miscellaneous marital aids on the back wall and on the right wall near the customer service counter. A rack of adult greeting cards was near the right wall of the erotic devices.

The report also described the mini motion picture theater booths and the titles of movies available for viewing in those booths. According to the report, movies were available on two separate channels: a red channel and a green channel. Each channel offered both "general release" and "sexually oriented" film selections. The report indicated that zoning officers "viewed all of the selections for the red and green channels, both the sexually oriented and general release videos[, and] found all of the adult oriented movies . . . to depict specified sexual activities and/or anatomical areas." Officer Levine also testified about the inspections, and the tax collector, John Rascoe, provided information tending to show that the business was located within one thousand two hundred feet of another sexually oriented business.

Thus, there is competent and sufficient evidence to support the findings of fact made by the Board, which in turn support the Boards's conclusion that Fantasy World, doing business as Xanadu,

was in violation of the City's zoning requirements. This assignment of error is overruled.

## VIII.

[6] Finally, we address Fantasy World's constitutional arguments. Fantast World contends that the City's denial of its privilege license constituted an unconstitutional prior restraint against free expression in violation of the First and Fourteenth Amendments of the United States Constitution because: (1) the City's licensing scheme vests unchecked discretion in the City tax collector to deny a business privilege license, and (2) the judicial review of a denial is not sufficiently prompt. We disagree.

Localities may permissibly make adult establishments subject to zoning requirements:

> [A] municipality may control the location of theaters as well as the location of other commercial establishments, either by confining them to certain specified commercial zones or by requiring that they be dispersed throughout the city. The mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not a sufficient reason for invalidating these ordinances.

*Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 62, 49 L. Ed. 2d 310 (1976). Zoning ordinances that do not ban adult entertainment altogether but instead place only spacing limitations on such businesses are "properly analyzed as a form of time, place, and manner regulation." *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46, 89 L. Ed. 2d 29, 37 (1986). " '[C]ontent-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Id.* at 47, 89 L. Ed. 2d at 37. A city's interest in attempting to preserve the quality of its urban life meets the "substantial governmental interest" standard. *Id.* at 50, 89 L. Ed. 2d at 39. A city does not "limit alternative avenues of communication" by dispersing or concentrating adult oriented business through valid zoning requirements. *Id.* at 52, 89 L. Ed. 2d at 41.

However, "[l]icensing schemes directed at sexually oriented businesses engaged in protected expressive activity pose special problems because of the risks of censorship and suppression associated with prior restraints on speech." *Chesapeake B & M v. Harford County*, 58 F.3d 1005, 1010 (4th Cir. 1995). "A licensing [scheme] plac-

ing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757, 100 L. Ed. 2d 771, 782 (1988). "Unbridled discretion naturally exists when a licensing scheme does not impose adequate standards to guide the licensor's discretion." *Chesapeake B & M*, 58 F.3d at 1009. There is a significant distinction between "exercis[ing] discretion by passing judgment on the content of any protected speech" and "review[ing] the general qualifications of each license applicant"; the latter is "a ministerial action that is not presumptively invalid." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 229, 107 L. Ed. 2d 603, 621 (1990) (plurality opinion). In addition, a licensing scheme must not only require a timely decision by the licensing authority but also must "assure a prompt final judicial decision to immunize the deterrent effect of an interim and possibly erroneous denial of a license." *Freeman v. Maryland*, 380 U.S. 51, 58-59, 13 L. Ed. 2d 649, 654-55 (1965).

In the present case, the City tax collector denied Fantasy World's application for a business privilege license pursuant to Greensboro Ordinance § 13-48, set forth *supra* at 610, 592 S.E.2d at 210. We conclude that this ordinance does not create a prior restraint on free expression, and that sufficient procedural safeguards exist to satisfy the applicable constitutional requirements.

To the extent that Greensboro Ordinance § 13-48 involves application of City zoning ordinances, it does not run afoul of constitutional principles. The General Assembly has found that "sexually oriented businesses can and do cause adverse secondary impacts on neighboring properties" and has authorized municipalities to enact location restrictions for such businesses. N.C.G.S. §§ 160A-181.1(a), (c)(1) (2003). Greensboro has enacted restrictions pursuant to this statute. Greensboro Code of Ordinances § 30-2-2.7 (definitions), 30-2-2.73.5 (spacing requirements). The zoning requirements set forth by the City's zoning ordinances, and imposed upon the City tax collector by Greensboro Ordinance § 13-48, easily comport with the Constitutional requirements established in *Renton*, 475 U.S. at 50, 52, 89 L. Ed. 2d at 38, 41.

To the extent that Greensboro Ordinance § 13-48 involves administration of the privilege license tax, it neither places unbridled discretion in tax collection officials, nor denies appropriate judicial relief. The tax collector is authorized to inquire into the zoning compliance of privilege license applicants and is directed to deny the application if an applicant is operating or seeks to operate in violation

of local zoning requirements. Greensboro Code of Ordinances § 13-48. Accordingly, the City tax collector performs the "ministerial function" of applying valid privilege license application processing guidelines and zoning compliance guidelines. The vesting of such authority in a government official is not presumptively invalid, and we discern no constitutional infirmities with the tax collector's application of Greensboro Ordinance § 13-48.

With respect to the requirement for prompt judicial review, the tax collector's zoning decision is immediately appealable to the City Zoning Board of Adjustment, and the Board's decision may be reviewed in superior court upon the filing of a petition for *certiorari. See* N.C.G.S. § 160A-388(b),(e) (2003). Fantasy World relies on authority from the United States Sixth Circuit Court of Appeals holding that the possibility of a discretionary writ is insufficient to ensure appropriate judicial review. *See Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377, 401 (6th Cir. 2001), *cert. denied*, 535 U.S. 1073, 152 L. Ed. 2d 855 (2002). This case is not binding authority upon this Court, and we decline to extend its reasoning to declare the judicial relief provided in G.S. § 160A-388 to be constitutionally insufficient. Rather, in the instant case, we are persuaded that Fantasy World was afforded the possibility of sufficiently prompt judicial review.

This assignment of error is overruled.

Affirmed.

Chief Judge MARTIN and Judge STEELMAN concur.