JUANITA HARDING, JOSEPH HENRY HARDING, MARGARET BORDNER, PAT SAWYER, JESSE GENTRY AND MADELYN GENTRY, AND C.E. WHITAKER, PETITIONERS v. THE BOARD OF ADJUSTMENT OF DAVIE COUNTY, RESPONDENT, AND HIGH PERFORMANCE HOLDINGS, LLC, INTERVENOR

No. COA04-708

(Filed 17 May 2005)

**1. Zoning— special use permit—burden of proof**

The Davie County Board of Adjustment correctly placed the burden of proof on the applicant under a Davie County special use ordinance, although the Board did not specify the burden of proof it applied, and the Superior Court order affirming the Board cited an opinion to the contrary.

**2. Zoning— special use permit—go-cart track—evidence considered**

Board of Adjustment proceedings are quasi-judicial and the board, not being bound by the rules of evidence, may consider all of the evidence offered. Here, there was substantial evidence on

which the Davie County Board of Adjustment could base its findings and conclusions in ruling on a special use permit for a go-cart tract at a drag strip, even if the evidence would have supported contrary findings.

**3. Zoning— special use permit—go-cart track—sufficiency of evidence**

Under the whole record test, the Davie County Board of Adjustment's decision to grant a special use permit for a go-cart track at a drag strip was not arbitrary or capricious.

Appeal by petitioners from judgment and order entered 13 January 2004 by Judge Mark Klass in Superior Court in Davie County. Heard in the Court of Appeals 12 January 2005.

*Henry P. Van Hoy, II, for petitioner-appellants.*

*Price Law Office, by Robert E. Price, Jr., for respondent-appellee.*

*Bell, Davis & Pitt, P.A., by James R. Fox and Donald M. Nielsen, for intervenor-appellee.*

HUDSON, Judge.

On 13 January 2003, High Performance Holdings, LLC, (HPH) filed an application for a special use permit with the Davie County Board of Adjustment (the Board), seeking to build and operate a go-cart track. On 5 May 2003, after four nights of public hearings, the Board approved the permit, over the opposition of petitioners, all of whom live near the proposed site. The petitioners filed a writ of certiorari in Superior Court in Davie County on 8 September 2003, which the court granted. HPH filed a motion to intervene on 22 September 2003, which the court also granted. After a hearing on 15 December 2003, the court affirmed the Board's decision and entered judgment accordingly on 13 January 2004. Petitioners appeal. For the reasons discussed below, we affirm.

The evidence tends to show that HPH owns a 134-acre tract of land in rural Davie County. HPH intends to build and operate a go-cart track on approximately 35 acres of its property as part of its operation called "Farmington Motorsports Park." This 35-acre tract is zoned Residential-Agricultural (R-A), and a go-cart track is a permitted use in Davie County R-A zoning districts, subject to the granting of a special use permit by the Board. The proposed go-cart track site

is adjacent to an already existing dragstrip. The property where the dragstrip is located is zoned Highway-Business (H-B). The dragstrip has been there since at least 1961, and predates Davie County zoning ordinances, and is thus a non-conforming use within the meaning of the zoning code. The petitioners all live near the proposed go-cart track site and allege that they have been damaged by the Board's decision to allow the go-cart track.

[1] Petitioners contend first that the Board of Adjustment erred by placing the burden of proof on them to prove that the health and safety requirements of the special use permit statute had not been met, and that the superior court erred in affirming. We disagree.

Davie County Ordinance § 155.236 (C) states, in pertinent part, that a special use permit shall not be granted unless:

> The Board of Adjustment finds that in the particular case in question, the use for which the special use permit is sought will not adversely affect the health or safety of persons residing or working the neighborhood of the proposed use and will not be detrimental to the public welfare . . .

Petitioners argue that our Courts have distinguished between ordinances with specific and general requirements. They assert that the burden of proof of specific requirements rests with the applicant, *Mann Media Inc. v. Randolph County Planning Bd.*, 356 N.C. 1, 565 S.E.2d 9 (2002), but that the burden of proof of general requirements is on the opponent. *Woodhouse v. Bd. of Comm'rs of Nags Head*, 299 N.C. 211, 261 S.E.2d 882 (1980). Petitioners contend that the ordinance here includes a specific requirement, and thus, the burden of proof should have fallen on the applicant to show that there would be no adverse affect on health or safety and no detriment to the public welfare.

Here, the Board's decision does not specify what burden of proof it applied, and the petitioners base their argument that the Board placed the burden on them on the Superior court's citation to *Woodhouse* in its order. The Superior court's order does cite *Woodhouse*, stating in one of its conclusions of law that:

> The burden of proving or disproving general considerations, involving an assessment of the use's impact on 'health, safety and welfare of the community falls upon those who oppose the issuance of a [special use permit].'

However, the court goes on to state that,

> [i]n any event, the Court finds, upon a review of the whole record
> that HPH met any arguably applicable burdens of production and
> persuasion and that its evidence satisfied the specific and general
> requirements of the Davie County Zoning Code.

Also, in another conclusion of law, the court states that for an
applicant to make out a *prima facie* case, he or she must "pro-
duce[] competent, material and substantial evidence tending to estab-
lish the existence of facts and conditions which the ordinance
requires for the issuance of a special use permit" (quoting *Refining
Co. v. Bd. of Alderman*, 284 N.C. 458, 468, 202 S.E.2d 129, 136 (1974)).
Thus, we conclude that in spite of the Superior court's mention of
*Woodhouse*, the rest of the record shows that the Board did in fact
place the burden on the applicant. Accordingly, we overrule this
assignment of error.

**[2]** In their second argument, petitioners contend that the Board's
and superior court's findings of fact and conclusions of law are not
supported by competent, material, and substantial evidence in the
record as a whole. The superior court in this case reviewed the
Board's decision pursuant to N.C. Gen. Stat. § 153A-345 (e) (2003). On
appeal from a superior court's review of a municipal zoning board of
adjustment, this Court's standard of review is limited to "(1) deter-
mining whether the trial court exercised the appropriate scope of
review and, if appropriate, (2) deciding whether the court did so
properly." *Fantasy World, Inc. v. Greensboro Bd. of Adjustment*, 162
N.C. App. 603, 609, 592 S.E.2d 205, 209 (2004) (internal citations and
question marks omitted); *but see, Capital Outdoor, Inc. v. Guilford
County Bd. of Adjustment*, 355 N.C. 269, 559 S.E.2d 547 (2002)
(Superior court's failure to set forth standard of review does not
necessitate reversal). In our review of a Superior court's order regard-
ing a zoning board of adjustment's decision, "[t]he scope of our
review is the same as that of the trial court." *Fantasy World*, 162 N.C.
App. at 609, 592 S.E.2d at 209 (citing *Coastal Ready-Mix Concrete Co.
v. Bd. of Comm'rs*, 299 N.C. 620, 627, 265 S.E.2d 379, 383 (1980)).

The reviewing court applies the "whole record" test when the
petitioner alleges that the decision was not supported by substantial
evidence or was arbitrary and capricious. *Tate Terrace Realty
Investors, Inc. v. Currituck County*, 127 N.C. App. 212, 218, 488
S.E.2d 845, 849 (1997) (internal citation omitted). Here, as the su-
perior court applied the correct standard of review—the whole

record test—we review whether it did so properly. In reviewing a superior court's order we must determine " 'not whether the evidence before the superior court supported that court's order[,] but whether the evidence before the Town Council supported the Council's action.' " *William Brewster Co., Inc. v. Town of Huntersville*, 161 N.C. App. 132, 134, 588 S.E.2d 16, 19 (2003) (internal citation omitted). "The court must examine all competent evidence to determine if the record supports the board's findings and conclusions." *Id.* We must determine whether the Board's decision is supported by "substantial evidence.' " *ACT-UP Triangle v. Comm'n for Health Servs.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (internal citation omitted). " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at 707, 483 S.E.2d at 393 (internal citation omitted). The whole record test "does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*." *Thompson v. Wake County Bd. of Educ.*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977). Under the whole record test, the Board's decision must stand unless it is arbitrary and capricious. *Mann*, 356 N.C. at 14, 565 S.E.2d at 19.

Petitioners contend that there was not substantial evidence to support the Board's findings regarding noise. Specifically, they object to the following findings:

> 3) The go-cart track . . . will not adversely affect the health or safety of persons residing or working in the neighborhood of the go-cart track. This is based upon sworn testimony and evidence submitted during the hearing which shows the following:

> * * *

> (c) A landscaped berm will be installed adjoining the Harding property . . . to reduce the sound and provide a screen from activities on the site.

> * * *

> (g) Sound levels from the co-cart track will not exceed those already existing in the neighborhood, primarily generated by the drag racing course. Evidence provided by the petitioner's sound expert, S&ME, far out weighed the evidence offered by the opponents. It is the Board's opinion that if the proposed

go-cart track stood alone, that the noise generated by the go-cart track would not be of any material significance so as to be detrimental to the neighborhood.

After careful review of the record, we conclude that these findings are supported by substantial evidence. Dwayne Rakestraw, a civil engineer, testified that because dragsters typically run at 110 decibels (dB), they would "completely drown out everything else." Rakestraw also testified that the level of noise at Petitioner Harding's house would be similar to that generated by a passing car. Likewise, test results of the engineering firm S&ME indicated that "noise levels generated by the carts would be expected to add 1 to 2dB to the overall noise levels generated by the operation of the dragster measured at the eastern property line."

Furthermore, in a presentation made to the Board by HPH, the Board heard evidence that the go-carts would be subject to strict equipment regulations to reduce noise and that the proposed landscaped berm and natural barriers would achieve a 5-10dB reduction, while proposed plants and trees would achieve another 1-2dB reduction. This presentation also suggested that at normal distances the carts produce noise in the range of conversation or passenger cars and that as distance increases, so does the perceived sound level. The calculations were prepared by Rakestraw and were based on the average noise produced by 30 running carts. According to these calculations, the nearest neighbor, residing 300 feet from the track, would be expected to have a noise level of approximately 74dB with the barriers in place—a noise level falling in between that of a passenger car and a dishwasher. The next closest neighbor, 700 feet from the track, would be expected to have a level of 69dB, which is about the same as a passenger car. Neighbors living 1500 feet and farther from the track would experience 63dB and less, only somewhat above the level of normal conversation, which is about 60dB.

Petitioners assert that the SM&E test results and HPH's presentation to the Board are incompetent evidence because they are hearsay and too general and speculative. Similarly, petitioners contend that Rakestraw's testimony was not competent because he was not properly qualified as a sound expert. However, Board proceedings are quasi-judicial in nature and the Board is not bound by the rules of evidence, but may consider all of the evidence offered. *Humble Oil & Refining Co. v. Bd. of Aldermen*, 284 N.C. 458, 470, 202 S.E.2d 129, 137 (1974).

Local boards, such as municipal boards of adjustment, are not strictly bound by formal rules of evidence, as long as the party whose rights are being determined has the opportunity to cross-examine adverse witnesses and to offer evidence in support of his position and in rebuttal of his opponent's.

*Burton v. New Hanover County Zoning Bd. of Adjustment*, 49 N.C. App. 439, 442, 271 S.E.2d 550, 552 (1980). Here, petitioners do not assert that they never had the opportunity to cross-examine witnesses or offer evidence in support of their position in rebuttal. Furthermore, during the hearings, they neither challenged Mr. Rakestraw's qualifications to testify on noise and sound, nor offered any contradictory expert evidence.

Although petitioners presented evidence about the adverse effects of sound, we conclude that there was substantial evidence on which the Board could base its findings of fact and conclusions of law regarding the effect of the noise generated by the proposed go-cart track on the surrounding community. Even if the evidence in the record would have supported contrary findings and conclusions, this Court will not substitute its judgment for that of the Board where there is substantial evidence to support the Board's decision.

[3] In their final argument, petitioners contend that the findings of fact and conclusions of law made by the Board, and affirmed by the court, are arbitrary and capricious. We disagree.

The arbitrary or capricious standard is a difficult one to meet. Administrative agency decisions may be reversed as arbitrary or capricious if they are patently in bad faith or whimsical in the sense that they indicate a lack of fair and careful consideration or fail to indicate [] any course of reasoning and the exercise of judgment.

*Mann*, 356 N.C. at 16, 565 S.E.2d at 19 (internal citations and quotation marks omitted). Petitioners assert that the Board's decision was whimsical and lacked fair and careful consideration. We use the whole record test to determine whether a Board's decision is arbitrary or capricious. *CG&T Corp. v. Bd. of Adjustment of Wilmington*, 105 N.C. App. 32, 411 S.E.2d 655 (1992). Our review of the whole record here does not indicate that the Board's decision was whimsical or lacked fair and careful consideration. As such, we overrule this assignment of error.

**CURRITUCK ASSOCS.-RESIDENTIAL P'SHIP v. HOLLOWELL**

[170 N.C. App. 399 (2005)]

Affirmed.

Judges WYNN and STEELMAN concur.