MMR HOLDINGS, LLC, AND TOWN & COUNTRY FORD, INC., PETITIONERS v. CITY OF CHARLOTTE AND THE CHARLOTTE ZONING BOARD OF ADJUSTMENT, RESPONDENTS

No. COA04-1618

(Filed 15 November 2005)

**Zoning— definition of facade—alteration of nonconforming sign**

An order that a nonconforming sign be removed because more of the facade of the building had been altered than a city zoning ordinance allowed was remanded for determination of a reasonable definition of "facade" consistent with the city's intent in passing the ordinance and with the use of the word throughout the ordinance. The zoning board of adjustment may then determine the extent of facade alteration in this case.

Appeal by petitioners from order entered 1 September 2004 by Special Superior Court Judge Albert Diaz in Mecklenburg County Superior Court. Heard in the Court of Appeals 17 August 2005.

*James, McElroy & Diehl, P.A., by Richard B. Fennell, for petitioners-appellants.*

*Office of the City Attorney, by Assistant City Attorney Terrie V. Hagler-Gray, for respondents-appellees.*

GEER, Judge.

The sole issue raised in this appeal by petitioners MMR Holdings, LLC and Town & Country Ford, Inc. (collectively "T&C") is the proper construction of the word "facade" in the zoning ordinance of the City of Charlotte. Because both the Charlotte Zoning Board of Adjustment

(the "Board") and the superior court defined the term "facade" in a manner that is at odds with the term's plain and ordinary meaning, we reverse and remand for further proceedings.

## Facts

T&C has operated an automobile dealership for many years on leased property in Charlotte, North Carolina currently owned by MMR Holdings, LLC. One of the features of T&C's dealership is a large sign stating the name of the dealership, which stretches across the top of a 40-foot deep, eight-foot thick canopy attached to the front of the dealership building. The canopy has been in place since the late 1970s and extends the width of the building.

A provision of the City's zoning ordinance specifically prohibits roof signs. *Charlotte, N.C., Code* § 13.105 (2004). It is undisputed that the sign on T&C's canopy violates this prohibition. The City's zoning ordinance, however, permits nonconforming roof signs erected prior to 1 February 1988—as T&C's sign was—to remain until there are "[s]tructural or nonstructural alterations excluding routine maintenance and repair of the facade of the principal building that exceed 50% of the facade's area." At that time, any non-conforming sign must be removed or brought into compliance with the ordinance. *Charlotte, N.C., Code* § 13.112(1)(a), .112(1)(b)(3) (2004).

In spring 2003, T&C remodeled portions of the interior and exterior of its dealership. Among other changes, this remodel included the complete replacement of the Plexiglas surrounding the canopy with new lukabond paneling. Subsequent to T&C's remodel, the Zoning Code Enforcement Inspector cited T&C for violating the prohibition on roof signs. The inspector took the position that T&C's remodel constituted an alteration of more than 50% of the facade of the principal building and, therefore, voided the legal nonconforming status of T&C's sign. The inspector ordered T&C to remove the sign.

T&C appealed the citation to the Board. The Board found in pertinent part:

3. A facade is defined in The American Heritage Dictionary as "a face of a building; especially, such a face that is given distinguishing treatment. The face or front part of anything[;] especially, an artificial or false front."

4. A canopy is defined in Section 13.102 of the [City's zoning ordinance] as "a permanent structure other than an awning made

of cloth, metal or other material attached or unattached to a building for the purpose of providing shelter to patrons or automobiles, or as a decorative feature on a building wall."

5. The extreme width of the canopy attached to [T&C's] building separates the glass front of the building from the new *artificial or false front* on which [T&C] has placed the new signage. . . . .

6. The front of the canopy to [T&C's] building *is the facade of the building.*

(Emphases added.) Based upon these findings, the Board concluded that T&C lost its "legal nonconforming status . . . when it structurally altered more than 50%" of the front of the canopy during T&C's remodel. The Board, therefore, affirmed the inspector's decision.[1]

Pursuant to N.C. Gen. Stat. § 160A-388 (2003), T&C filed a petition for writ of certiorari in the Mecklenburg County Superior Court, seeking review of the Board's decision. The court granted T&C's petition, concluded that the Board's construction of the word "facade" in the City's ordinance was not unreasonable, and affirmed the Board's decision. T&C filed a timely notice of appeal to this Court.

## Discussion

To review the decision of a zoning board, a superior court must determine what type of error the petitioner asserts. *In re Willis*, 129 N.C. App. 499, 501, 500 S.E.2d 723, 725 (1998). When the petitioner claims that the municipality's conclusions were either unsupported by the evidence or arbitrary and capricious, the appropriate standard of review is the "whole record" test. *Id.* On the other hand, if the petitioner correctly contends that the agency's decision was based on an error of law, *de novo* review is required. *Id.*

On an appeal from a superior court's review of a zoning board decision, the scope of our review is limited to determining whether the trial court exercised the appropriate standard of review and, if so, deciding if the trial court did so properly. *Harding v. Bd. of Adjustment of Davie County,* 170 N.C. App. 392, 395, 612 S.E.2d 431, 434 (2005). Our standard of review is the same as that of the superior court. *Id.*

---

1. We note that the Board also addressed citations regarding the number and location of flags at T&C's dealership. The Board's determinations on those issues have not, however, been appealed to this Court.

**MMR HOLDINGS, LLC v. CITY OF CHARLOTTE**

[174 N.C. App. 540 (2005)]

Here, the outcome of the case turns on the proper construction of the word "facade" and, therefore, involves solely a question of law that we consider *de novo. Tucker v. Mecklenburg County Zoning Bd. of Adjustment*, 148 N.C. App. 52, 55, 557 S.E.2d 631, 634 (2001), *aff'd in part per curiam, disc. review improvidently allowed in part*, 356 N.C. 658, 576 S.E.2d 324 (2003). The essential goal in construing an ordinance is to determine the intent of the municipality's legislative body. *Knight v. Town of Knightdale*, 164 N.C. App. 766, 769, 596 S.E.2d 881, 884 (2004). Accordingly, the rules applicable to the construction of statutes also apply to the construction of municipal ordinances. *Id.*

When a word is not otherwise defined in an ordinance, we should give the term "its plain and ordinary meaning." *Ayers v. Bd. of Adjustment for Town of Robersonville*, 113 N.C. App. 528, 531, 439 S.E.2d 199, 201, *disc. review denied*, 336 N.C. 71, 445 S.E.2d 28 (1994). Courts "are permitted to look beyond the language of [an] ordinance only when it contains some ambiguity." *Procter v. City of Raleigh Bd. of Adjustment*, 140 N.C. App. 784, 786, 538 S.E.2d 621, 622 (2000).

The word "facade" is not defined in the City's zoning ordinance and the parties do not assert its use is ambiguous. In order to determine the term's plain and ordinary meaning, the Board referred to a dictionary.[2] As set out in its findings of fact, the Board adopted an edited version of the definition included in *The American Heritage Dictionary*. The full definition of "facade" contained in *American Heritage* is:

1. *Architecture.* A face of a building; especially, such a face that is given distinguishing treatment: "*Pink classical facades peeled off and showed the mud beneath*" (Graham Greene). 2. The face or front part of anything; especially, an artificial or false front: "*Of most famous people we know only the imposing facade*" (Edith Hamilton).

*The American Heritage Dictionary of the English Language* 468 (10th ed. 1981).

---

2. While not an exclusive solution, this Court has referred to dictionaries to help determine the plain and ordinary meaning of words in statutes and ordinances that are unambiguous and otherwise undefined. *See Nash-Rocky Mount Bd. of Educ. v. Rocky Mount Bd. of Adjustment*, 169 N.C. App. 587, 590, 610 S.E.2d 255, 258 (2005) (consulting a dictionary in determining the plain and ordinary meaning of "building"); *Patel v. Stone*, 138 N.C. App. 693, 695, 531 S.E.2d 879, 881 (consulting a dictionary in determining the plain and ordinary meaning of "right"), *disc. review denied*, 353 N.C. 267, 546 S.E.2d 109 (2000).

Of the two definitions set out in the *American Heritage*, the Board bypassed the first, which applies to architecture, in favor of the second. Based upon the second definition, the Board concluded that the front of T&C's canopy was an "artificial or false front" and was, therefore, the facade of the entire building. The first definition relating to architecture was, however, more applicable to a decision regarding what portion of a building constitutes its facade. Moreover, the explanatory sentence—edited out by the Board—uses the term in the context of a physical structure: "*Pink classical facades peeled off and showed the mud beneath.*"

By contrast, the second definition, which was relied upon by the Board in reaching its decision, defines facade more generally as the "face or front part of anything." Unlike the first definition, it does not specifically relate to buildings or architecture. Indeed, the corresponding explanatory sentence—omitted by the Board—suggests that using the term to designate an "artificial or false front," critical language for the Board's decision, is inapposite in the building or architectural context: "*Of most famous people we know only the imposing facade.*" The second more generally applicable definition of "facade" frequently is used in a metaphorical, rather than physical, sense. The Board's reliance on the second definition rather than the architectural definition was unreasonable. Reference to *Webster's Third New International Dictionary* ("*Webster's*") supports our view that *American Heritage's* first definition is more pertinent to the proper construction of the ordinance. *Webster's* defines "facade" as "the front of a building[;] . . . a face . . . of a building that is given emphasis by special architectural treatment . . . ." *Webster's Third New Int'l Dictionary* 811 (1968).

Applied to T&C's dealership, the definitions in both *American Heritage* and *Webster's* suggest that the facade is *at least* the entire side of the building to which the canopy, being the special or distinguishing architectural treatment, is attached. Given these definitions, a facade cannot be merely the front of any special architectural treatment, as the Board found. We, therefore, conclude it was error for the Board to determine that the facade of T&C's entire building consisted solely of the eight-foot thick strip across the front of T&C's canopy.

The definitions of both "face" and "front" support our determination that the Board's definition of facade was unreasonable. Both words feature prominently in the *American Heritage* and *Webster's* definitions of "facade." "Face" is defined as:

[A] front, upper, or outer surface or a surface presented to view or regarded as principal: as a: the front of anything having two or four sides—opposed to *back*; usu. distinguished from *side* b: the facade esp. of a building . . . .

*Id.* Similarly, "front" is defined as something that confronts or faces forward, including "a face of a building; *esp*: the face that contains the principal entrance . . . ." *Id.* at 914. Thus, the "face" or "front" of a building includes the principal side that is presented to view or contains the principal entrance. Indeed, even the City notes in its brief that T&C has a canopy "attached to the glass *front*" of its building. (Emphasis added.)

We also observe that other portions of the City's ordinance use the terms "facade" and "canopy" in a manner that counsels against affirming the Board's interpretation of the words in this case. A court "does not read segments of a statute in isolation. Rather, we construe statutes *in pari materia*, giving effect, if possible, to every provision." *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 188, 594 S.E.2d 1, 20 (2004).

Use of the term "facade" throughout the rest of the ordinance suggests an intention that the word be construed more broadly than as merely the front of a canopy. For example, in a section addressing urban design standards, the ordinance states that all "buildings fronting directly on a street shall be designed so that the *first floor street facade* of the building(s) along all streets *includes clear glass windows and doors* . . . ." *Charlotte, N.C., Code* § 9.1209(1)(a) (2004) (emphases added). Several subsections later the ordinance states that a "blank wall [can be] a facade" and that emergency exit doors may be located on facades only if the doors are "decorative and part of the overall building design." *Charlotte, N.C., Code* § 9.1209(1)(d), (f). Similarly, in a section addressing multifamily dwellings, the ordinance states that certain buildings "must have the building elevation facing the street as a *front architectural facade with an entrance doorway*." *Charlotte, N.C., Code* § 9.303(18)(f)(iv) (2004) (emphasis added). The requirements in these sections that facades have windows, doorways, and decorative architecture cannot be reconciled with the Board's interpretation in this case that the facade includes the decorative architecture, but not the dealership's glass front and entranceway.

By comparison, the ordinance's further use of the term "canopy" never demonstrates any intention by the City to have it subsume the

term "facade." In another section, the ordinance states that canopies "*and similar appurtenances* are encouraged at the entrances to buildings . . . ." *Charlotte, N.C., Code* § 10.804(1)(c) (2004) (emphasis added). Thus, a "canopy" in § 10.804(1)(c) is an appurtenance to the face of a building—not a facade in and of itself. Indeed, even the ordinance chapter addressed in this appeal states that "[c]anopies and awnings shall not be calculated in the total square footage of a building wall." *Charlotte, N.C., Code* § 13.108(2) (2004). The Board's interpretation would require removing a building's "facade" from the calculation of a building wall's square footage since under the Board's definition, the facade would merely be the front of the canopy, which is explicitly excluded from the calculation. We do not think this odd result was intended by the City when passing the ordinance. *Variety Theatres, Inc. v. Cleveland County*, 282 N.C. 272, 275, 192 S.E.2d 290, 292 (1972) ("In construing any statute or ordinance the court will avoid an interpretation which would lead to absurd results."), *appeal dismissed*, 411 U.S. 911, 36 L. Ed. 2d 303, 93 S. Ct. 1548 (1973).

While we have rejected the Board's interpretation of the word "facade" in the decision below, we recognize that one of the functions of a board of adjustment is to interpret its own local zoning ordinance, and its interpretations are owed some deference. *Whiteco Outdoor Adver. v. Johnston County Bd. of Adjustment*, 132 N.C. App. 465, 470, 513 S.E.2d 70, 74 (1999). We, therefore, decline to consider T&C's position that its "facade" included all faces of the building that the public can see. While that is a reasonable interpretation of the word "facade," it would equally be reasonable to limit "facade" to the front of the building. We remand this case to the superior court to remand to the Board to determine in the first instance what reasonable definition of "facade" is most consistent with the City's intention in passing the ordinance and with the use of the word "facade" throughout the ordinance. *Cf. Coscan Washington, Inc. v. Maryland-Nat'l Capital Park & Planning Comm'n*, 87 Md. App. 602, 628, 590 A.2d 1080, 1092 (holding that a planning board was reasonable in its chosen definition of "facade"), *cert. denied*, 324 Md. 324, 597 A.2d 421 (1991). Once the Board has defined "facade" in this manner, it may then determine which of the walls of T&C's dealership are part of the facade and whether more than 50% of the facade was altered in T&C's remodel.

Reversed and remanded.

Judges CALABRIA and ELMORE concur.