STATE v. DESPERADOS, INC.

[180 N.C. App. 378 (2006)]

————————

STATE OF NORTH CAROLINA v. DESPERADOS, INC. AND CYNTHIA L. PEREZ, DEFENDANTS

No. COA05-1397

(Filed 5 December 2006)

**Nuisance— noise ordinance—constitutionality—prior restraints on free speech**

The trial court erred by concluding that a county noise ordinance was not void, and defendants' convictions are vacated, because: (1) even though the ordinance prohibits sound amplification only at certain levels and at certain times and was thus not unconstitutionally overbroad, the ordinance improperly left exemption from the ordinance in the sole unguided and unregulated discretion of the county commissioners; (2) the county was allowed to issue special event permits in its discretion with no articulated standards, acting as an arbitrary prior restraint on free speech; (3) although defendants appeal from their criminal convictions for violating the ordinance and not from the denial of their request for a special use permit, when a licensing

statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license; and (4) once a defendant faces prosecution under an ordinance, he is entitled to defend himself by raising the constitutionality of the ordinance.

Judge TYSON concurring in part and dissenting in part.

Appeal by defendants from judgments entered 13 January 2005 by Judge Thomas D. Haigwood in the Superior Court in Beaufort County. Heard in the Court of Appeals 15 August 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Barry H. Bloch, for the State.*

*Jeffrey S. Miller, for defendant-appellants.*

HUDSON, Judge.

A jury convicted defendant Cynthia Perez on twelve counts of violating the Beaufort County noise ordinance, and defendant Desperados, Inc., of violating the same statute on four occasions. All violations occurred between 10 May 2003 and 15 February 2004. The court sentenced Perez to thirty days in prison, suspended, supervised probation for twenty-four months, a fine of $500 and a split sentence of seven days in custody on one of the counts, and thirty days in prison, suspended, supervised probation for twenty-four months, and a fine of $500 on each of the other ten counts. Desperados received a $500 fine for each of the charges against it. Defendants appeal. As discussed below, we vacate these convictions.

The evidence tended to show the following: Perez is president of corporate defendant Desperados, Inc., which operates a nightclub in Beaufort County. The club, known as Desperados, plays music on many Friday nights and all Saturday nights, often showcasing live bands. C.L. Summerlin, who owns a trailer park and residence approximately 200 to 300 yards from the club, was the source of almost all of the complaints about excessive noise from the club. Several tenants of the trailer park testified that noise from the club had disturbed them, but other park residents testified that they had never heard any noise coming from Desperados. Deputy sheriff Keith Owens and other officers testified that they had measured sound lev-

STATE v. DESPERADOS, INC.

[180 N.C. App. 378 (2006)]

els at the club and issued citations when the levels violated the county noise ordinance.

Defendants first argue that the ordinance is void because it is overbroad. We do not agree.

On 7 April 2003, the Beaufort County Commissioners adopted a noise ordinance, which in pertinent part prohibits sound amplification, defined as:

> Operate or allow operation of any sound amplification equipment so as to create sound levels exceeding 55 DBA or 65 dBC between 9:00 a.m. and 9:00 p.m. or exceeding 50 DBA or 60 dBC between 9:00 p.m. and 9:00 a.m., as measured anywhere outside of the boundary line pf the person or persons making, permitting or causing such noise. The foregoing limitations on the operation of sound amplification equipment shall not apply to special event permit issued by the County of Beaufort, the operation of horns, sirens, or other emergency warning devices actually being used in emergency circumstances. [sic]

The parties stipulated that Perez sought a special event permit from the county commission but was denied. The record reflects nothing about the grounds for the denial.

As this Court has noted:

> Noise ordinances present a great deal of problems in drafting and enforcing them because "the nature of sound makes resort to broadly stated definitions and prohibitions not only common but difficult to avoid." *People v. New York Trap Rock Corp.*, 57 N.Y.2d 371, 442 N.E.2d 1222, 1226, 456 N.Y.S.2d 711 (N.Y. 1982). A court may forbid enforcement of a noise statute or ordinance for overbreadth where it "reaches more broadly than is reasonably necessary to protect legitimate state interests" "at the expense of First Amendment freedoms." *Reeves v. McConn*, 631 F.2d 377, 383 (1980), *reh'g denied*, 638 F.2d 762 (5th Cir. 1981).

*State v. Garren*, 117 N.C. App. 393, 395-6, 451 S.E.2d 315, 317 (1994). This Court went on to quote *Reeves*:

> When the city fears disruption, it may prohibit conduct that actually causes, or imminently threatens to cause, material and substantial disruption of the community or invasion of the rights of others. Or the city may reasonably prohibit kinds or degrees of sound amplification that are clearly incompatible with the normal

activity of certain locations at certain times. But the city may not broadly prohibit reasonably amplified speech merely because of an undifferentiated fear that disruption might sometimes result. When First Amendment freedoms are involved, the city may protect its legitimate interests only with precision.

*Reeves*, 631 F.2d at 388. "Music, be it singing, from the radio, played on a phonograph, etc., falls within these protected freedoms." *Garren*, 117 N.C. App. At 396, 451 S.E.2d at 317. In *Garren*, we held over-broad a noise ordinance that sought "to ban any singing, yelling, or the playing of any radio, amplifier, musical instrument, phonograph, loudspeakers, or other device producing sound regardless of their level of sound or actual impact on a person." *Id.* The State argues first that the sound here was not music, but simply noise; the record reflects otherwise and we reject this contention. Here, by contrast with *Garren*, the ordinance is much narrower, prohibiting sound amplification only at certain levels and at certain times, and thus the ordinance is not over-broad.

Defendants also argue that while sound amplification may be regulated, the ordinance here improperly leaves exemption from the ordinance in the sole unguided and unregulated discretion of the county commissioners. Defendants contend that this ordinance is unconstitutional because it allows the "the County" to issue special event permits in its discretion with no articulated standards, acting as an arbitrary prior restraint on free speech. We agree.

In *Saia v. New York*, 334 U.S. 558, 92 L. Ed. 1574 (1948), the United States Supreme Court considered the constitutionality of an ordinance that forbade "the use of sound amplification devices except with permission of the Chief of Police." *Id.* at 558, 92 L. Ed. at 1576. The plaintiff, a minister, was first granted a permit to use a loudspeaker in a public park, but later denied an additional permit after complaints by citizens. *Id.* at 559, 92 L. Ed. at 1577. The Court in *Saia* held the ordinance unconstitutional on its face because:

To use a loud-speaker or amplifier one has to get a permit from the Chief of Police. There are no standards prescribed for the exercise of his discretion. The statute is not narrowly drawn to regulate the hours or places of use of loud-speakers, or the volume of sound (the decibels) to which they must be adjusted.

*Id.* at 560, 92 L. Ed. at 1577. This Court has recently summarized the law regarding prior restraints on free speech:

STATE v. DESPERADOS, INC.

[180 N.C. App. 378 (2006)]

"A licensing [scheme] placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757, 100 L. Ed. 2d 771, 782, 108 S. Ct. 2138 (1988). "Unbridled discretion naturally exists when a licensing scheme does not impose adequate standards to guide the licensor's discretion." [*Chesapeake B & M v. Harford County*, 58 F.3d 1005, 1009 (4th Cir. 1995).] There is a significant distinction between "exercising discretion by passing judgment on the content of any protected speech" and "reviewing the general qualifications of each license applicant"; the latter is "a ministerial action that is not presumptively invalid." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 229, 107 L. Ed. 2d 603, 621, 110 S. Ct. 596 (1990) (plurality opinion). In addition, a licensing scheme must not only require a timely decision by the licensing authority but also must "assure a prompt final judicial decision to immunize the deterrent effect of an interim and possibly erroneous denial of a license." *Freedman v. Maryland*, 380 U.S. 51, 58-59, 13 L. Ed. 2d 649, 654-55, 85 S. Ct. 734 (1965).

*Fantasy World, Inc. v. Greensboro Bd. of Adjustment*, 162 N.C. App. 603, 616-17, 592 S.E.2d 205, 214 (2004). Both parties cite *State v. Wiggins* in support of their positions, specifically the following language, discussing a statute that passed constitutional muster:

It is universal in its application. Anyone who does that which is prohibited by the statute is subject to its penalty. It does not confer upon an administrative official the authority to issue, in his discretion, permits to disturb public schools and, therefore, does not invite or permit that type of administrative discrimination against the disseminators of unpopular ideas which was condemned in *Saia* . . . .

*State v. Wiggins*, 272 N.C. 147, 158, 158 S.E.2d 37, 45 (1967).

Here, as discussed above, the ordinance is narrowly drawn, but constitutionally flawed in that it allows the County to exercise its discretion to issue a complete exemption in the form of a special events permit, while prescribing no standards for the exercise of that discretion. The record and briefs reveal nothing about the process by which the commissioners grant or deny special events permits, and thus we cannot say that the decision is made without unbridled discretion. This ordinance presents the same problem as the ordinance in *Saia*, and as discussed in *Wiggins*, *supra*, by conferring authority

STATE v. DESPERADOS, INC.

[180 N.C. App. 378 (2006)]

on public officials to issue permits in their unguided discretion. As such, the paragraph of the ordinance establishing prohibitions and exemptions is an impermissible prior restraint, which violates the First Amendment of the United States Constitution. Because the paragraph of the ordinance under which these defendants were convicted is unconstitutional, it cannot be the basis for their convictions, which we hereby vacate.

The dissent suggests that defendants cannot appeal the constitutionality of the ordinance due to the unbridled discretion granted in the special use permit process because defendants appeal from their criminal convictions for violating the ordinance rather than from the denial of their request for a special use permit. This conclusion is at odds with United States Supreme Court case law. "[W]hen a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 756-57, 100 L. Ed. 2d 771, 782, 108 S. Ct. 2138 (1988). In addition, once a defendant faces prosecution pursuant to an ordinance, he is entitled to defend himself by raising the constitutionality of that ordinance, as explained by the Court in a case examining the constitutionality of an anti-picketing ordinance:

> The cases when interpreted in the light of their facts indicate that the rule is not based upon any assumption that application for the license would be refused or would result in the imposition of other unlawful regulations. Rather it derives from an appreciation of the character of the evil inherent in a licensing system. The power of the licensor against which John Milton directed his assault by his 'Appeal for the Liberty of Unlicensed Printing' is pernicious not merely by reason of the censure of particular comments but by reason of the threat to censure comments on matters of public concern. It is not merely the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion. *One who might have had a license for the asking may therefore call into question the whole scheme of licensing when he is prosecuted for failure to procure it.*

*Thornhill v. Alabama*, 310 U.S. 88, 97, 84 L. Ed. 1093, 60 S. Ct. 736, 741-42 (1940) (internal citation omitted) (emphasis supplied). Similarly, in *Lovell v. Griffin*, the Court concluded that since the ordi-

STATE v. DESPERADOS, INC.

[180 N.C. App. 378 (2006)]

nance at issue was "void on its face, it was not necessary for appellant to seek a permit under it . . . . [but she] was entitled to contest its validity in answer to the [criminal] charge against her." 303 U.S. 444, 452-53, 82 L. Ed. 949, 954 (1938).

Because of this conclusion, we need not address defendants' other assignments of error.

Vacated.

Judge WYNN concurs.

Judge TYSON concurs in part, dissents in part by separate opinion.

TYSON, Judge concurring in part, dissenting in part.

I concur with the majority's holding that the ordinance is narrowly drawn. I disagree with the majority's holding the ordinance is "constitutionally flawed in that it allows the County to exercise its discretion to issue a complete exemption in the form of a special events permit, while prescribing no standards for the exercise of that discretion." The ordinance is not facially or *per se* unconstitutional. Defendants' criminal convictions should be affirmed. I respectfully dissent.

## I.  Failure to Preserve

Defendants' argument that Beaufort County unconstitutionally denied their application for a special event permit is not properly before us. Defendants did not appeal for the denial of the permit and did not apply for later permits. Defendants failed to properly preserve any objection, assign error to, or present an argument on appeal the ordinance is invalid because it was not kept on file in the Clerk's Office. The trial court did not err by imposing a sentence of thirty days as a Class 3, Level III misdemeanor and by imposing a $500.00 fine per violation.

## II.  Constitutionality of Ordinance

The majority's opinion concludes the noise ordinance is unconstitutional because the County has discretion to issue a complete exemption by issuing a special event permit and the ordinance does not contain standards to guide the County's discretion. I disagree.

"Statutes are presumed constitutional[.]" *State v. Watson*, 169 N.C. App. 331, 337, 610 S.E.2d 472, 477 (2005). The words used in a statute or ordinance are presumed to have plain meaning and will be upheld if its meaning is ascertainable with reasonable certainty by proper construction. *State v. Taylor*, 128 N.C. App. 616, 618-19, 495 S.E.2d 413, 415 (1998). "If a statute is susceptible to two interpretations, one constitutional and the other unconstitutional, the former will be adopted." *Id.*

> A criminal statute is not rendered unconstitutional by the fact that its application may be uncertain in exceptional cases, nor by the fact that the definition of the crime contains an element of degree as to which estimates might differ, or as to which a jury's estimate might differ from defendant's, so long as the general area of conduct against which the statute is directed is made plain. It is not violative of due process of law for a legislature in framing its criminal law to cast upon the public the duty of care and even of caution, provided there is sufficient warning to one bent on obedience that he comes near the proscribed area. Nor is it unfair to require that one who goes perilously close to an area of proscribed conduct take the risk that he may cross the line. 21 Am. Jur. 2d, Criminal Law, § 17, p. 100.

*State v. Dorsett*, 3 N.C. App. 331, 336, 164 S.E.2d 607, 610 (1968) (When the constitutionality of an ordinance attacked is clearly criminal in nature and is subject to the rule of strict construction, the courts must construe it with regard to the evil which it is intended to suppress.). Criminal statutes will be construed to effectuate the legislature's intent. *Id.* at 335, 164 S.E.2d at 609.

### A.  Delegation of Police Power to the County

"A county may by ordinance regulate, restrict, or prohibit the production or emission of noises or amplified speech, music, or other sounds that tend to annoy, disturb, or frighten its citizens." N.C. Gen. Stat. § 153A-133 (2005). The United States Court of Appeals for the Fifth Circuit noted in *Reeves v. McConn*:

> most citizens desire protection from unreasonable or disruptive levels of noise on the streets and from uninvited noise within the privacy of their homes. We say nothing today that prevents the city from granting that protection . . . [T]he city may reasonably prohibit kinds or degrees of sound amplification that are clearly

incompatible with the normal activity of certain locations at certain times.

631 F.2d 377, 388 (1980). This Court has upheld similar ordinances against Constitutional challenges. *State v. Garren*, 117 N.C. App. 393, 396, 451 S.E.2d 315, 317-18 (1994) (Upheld noise ordinance that prohibited load, raucous, and disturbing noise.); *see Taylor*, 128 N.C. App. at 618, 495 S.E.2d at 415 (Upheld noise ordinance that stated, "it shall be unlawful for any person to own, keep, or have within the county an animal that habitually or repeatedly makes excessive noises that tend to annoy, disturb, or frighten its citizens.").

The majority's opinion correctly concludes the ordinance only regulates sound amplification, neither the content nor delivery of the message, and states, "the ordinance is much narrower, prohibiting sound amplification only at certain levels and at certain times . . . ." The majority's opinion mistakenly relies upon *Lakewood v. Plain Dealer Publ. Co.*, 486 U.S. 750, 100 L. Ed. 2d 771 (1988), *Thornhill v. Alabama*, 310 U.S. 88, 84 L. Ed. 1093 (1940), and *Lovell v. Griffin*, 303 U.S. 444, 82 L. Ed. 949 (1938), to strike down the facial constitutionality of the ordinance. All three of these cases address unconstitutional ordinances chilling the dissemination of speech content and delivery of the information. *Lakewood*, 486 U.S. at 753, 100 L. Ed. 2d at 780 (ordinance required a permit for placement of news racks); *Thornhill*, 310 U.S. at 92-93, 84 L. Ed. at 1096 (ordinance prohibited loitering and picketing); *Lovell*, 303 U.S. at 447-48, 82 L. Ed. at 951-52 (ordinance prohibited the distribution of circulars, handbooks, advertising, or literature).

The County's noise ordinance neither chills nor prohibits free speech nor dissemination of information. The County's noise ordinance constitutes reasonable time, place, manner restrictions, not a restriction on content. *See State v. Petersilie*, 334 N.C. 169, 183, 432 S.E.2d 832, 840 (1993) ("Where a statute regulating the time, place and manner of expressive activity is content-neutral in that it does not forbid communication of a specific idea, it will be upheld if the restriction is 'narrowly tailored to serve a significant governmental interest,' and it 'leaves open ample alternatives for communication.' " (quoting *Burson v. Freeman*, 504 U.S. 191, 196, 119 L. Ed. 2d 5, 13 (1992); *United States v. Grace*, 461 U.S. 171, 177, 75 L. Ed. 2d 736, 743-44 (1983))).

The majority's opinion also fails to cite or distinguish *State v. Smedberg*, where this Court held constitutional the following statute:

(a) Subject to the provisions of this section, the creation of any unreasonably loud, disturbing, and unnecessary noise in the city is prohibited. Noise of such character, intensity, and duration as to be detrimental to the life or health of any individual is prohibited.

(b) The following acts, among others, are declared to be loud, disturbing, and unnecessary noises in violation of this section, but said enumeration shall not be deemed to be exclusive, namely:

\* \* \*

(14) Loudspeakers or amplifiers on vehicles. The use of mechanical loudspeakers or amplifiers on trucks, airplanes, or other vehicles for advertising or other purposes. Provided that in the exercise of free speech, loudspeakers or amplifiers may be used for non-commercial purposes under the following conditions:

\* \* \*

(b) It shall be unlawful for any person to speak into a loudspeaker or amplifier within the corporate limits of the city, when such loudspeaker or amplifier is so adjusted that the voice of the speaker is amplified to the extent that it is audible at a distance in excess of one hundred and fifty (150) feet from the person speaking. *Provided that the Guilford County Health Department may, upon obtaining a permit approved by the council, use loudspeakers or amplifiers as part of its educational campaign.*

31 N.C. App. 585, 586, 229 S.E.2d 841, 842 (1976) (emphasis supplied), *disc. rev. denied*, 291 N.C. 715, 232 S.E.2d 207 (1977). We stated:

The challenged ordinance does not infringe upon the constitutional right of free speech. It is a valid exercise of the police power of the municipality to promote public welfare and safety. Specifically, the ordinance is a reasonable regulation of the noise level designed to protect the tranquility and well-being of the citizens of Greensboro; it is narrowly drawn and properly enforceable.

*Id.*

In *Smedberg*, we upheld the ordinance's constitutionality, even though the Guilford County Health Department was exempted from the restrictions in the ordinance. 31 N.C. App. at 587, 229 S.E.2d at

843. Under this precedent, presuming defendants' constitutional argument was properly preserved, I vote to uphold the ordinance's facial constitutionality and affirm defendants' convictions.

The jury convicted defendants of violating the following ordinance on ten occasions:

> 3. Sound Amplification: Operate or allow the operation of any sound amplification equipment so as to create sound levels exceeding 55 dBA or 65 dBC between 9:00 a.m. and 9:00 p.m. or exceeding 50 dBA or 60 dBC between 9:00 pm and 9:00 a.m., as measured anywhere outside of the boundary line of the person or persons making, permitting or causing such noise. The foregoing limitations on the operation of sound amplification equipment shall not apply to special event permit issued by the County of Beaufort, the operation of horns, sirens, or other emergency warning devises actually being used in emergency circumstances.
>
> . . . .

> (b) Enforcement:

> 1. The violation of any provision of this Ordinance shall constitute a misdemeanor and shall be punished by a fine up to five hundred dollars ($500.00) or imprisonment of thirty (30) days or both fine and imprisonment. Each day on which any violation of this Ordinance shall continue shall constitute a separate and distinct violation and offense.

Defendants solely appeal from their criminal conviction for violations of the ordinance. Criminal penalties for violation of the ordinance are presumed constitutional. *Dorsett*, 3 N.C. App. at 336, 164 S.E.2d at 610. Defendants failed to present an argument that the criminal penalties for operation of sound amplification exceeding 55 dBA or 65 dBC between 9:00 a.m. and 9:00 p.m. or exceeding 50 dBA or 60 dBC between 9:00 p.m. and 9:00 a.m. as measured from property of others are unconstitutional.

Beaufort County has a delegated, statutory right under the State's police power to regulate the time, place, and manner of sound, as long as the noise ordinance is not unconstitutionally over broad. N.C. Gen. Stat. § 153A-133. The County's noise ordinance is a constitutional, content-neutral, time, place, manner restriction, as measured by the effect of defendants' conduct on their neighbor's property.

STATE v. DESPERADOS, INC.

[180 N.C. App. 378 (2006)]

*Petersilie,* 334 N.C. at 183, 432 S.E.2d at 840. This assignment of error is properly overruled.

Defendants also argue the ordinance is unconstitutional because Beaufort County may grant or deny a special event permit to exempt persons from the ordinance's regulations. Defendants' argument is misplaced. Defendants applied only once for a special event permit and did not appeal from its denial. Defendants appeal solely from their criminal conviction for violation of the ordinance and not from Beaufort County's denial of their special event permit application. On the later violations, defendants never filed an application for a special event permit despite their knowledge of the process to seek a permit.

Defendants argue the ordinance's language that "limitations on the operation of sound amplification equipment shall not apply to special event permit issued by the County of Beaufort" is facially unconstitutional. The constitutionality of this provision is not properly before us. Defendants failed to appeal from Beaufort County's denial of their special event permit application, and waived any review of the application of the ordinance to their activities. *See Mann Media, Inc. v. Randolph Cty. Planning Bd.,* 356 N.C. 1, 12, 565 S.E.2d 9, 17 (2002) (a reviewing superior court must sit in the posture of an appellate court on appeal from a grant or denial of special use permit); *see also County of Lancaster v. Mecklenburg County,* 334 N.C. 496, 506, 434 S.E.2d 604, 611 (1993) (zoning permit applicant must appeal to the board of adjustment if dissatisfied with zoning administrator's decision).

Defendants also failed to include its special permit application or the County's denial of the application in the record on appeal. Defendants never appealed from the County's denial of the permit. This Court is unable to review the constitutionality of the County's denial without an appeal and a proper record. This assignment of error should be dismissed. *See* N.C.R. App. P. 10(a)(3) (2006) (the record on appeal in criminal actions shall contain so much of the evidence as is necessary for an understanding of all errors assigned).

Since the majority's opinion reverses defendants' conviction on solely constitutional grounds for facial invalidity of the ordinance, they do not reach defendants' remaining three arguments. I find no error in defendants' convictions on any constitutional grounds and address their remaining three arguments.

STATE v. DESPERADOS, INC.

[180 N.C. App. 378 (2006)]

### III.  Public Inspection Requirement

#### A.  Issues

Defendants argue the ordinance is void because the Clerk's Office failed to keep it in an ordinance book available for public inspection as required by N.C. Gen. Stat. § 153A-48. Defendants assigned error to: (1) the trial court's overruling defendants' objection that "the certificate [on the ordinance] is signed by the clerk of the board [of County Commissioners] and not the clerk of the superior court" and (2) the trial court's denial of defendants' motion to dismiss because "a valid ordinance is kept in the office of the clerk, and this one is not, and the undisputed evidence shows that."

#### B.  Abandonment of Assigned Error

Defendants failed to argue the ordinance is invalid because "the certificate [on the ordinance] is signed by the clerk of the board and not the clerk of the superior court." Defendants have abandoned this assignment of error. *See* N.C.R. App. P. 28(b)(6) (2006) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.").

Defendants failed to object, obtain a ruling on the ordinance's validity when the ordinance was admitted into evidence, or argue that the ordinance is invalid because it was not being kept on file in the Clerk of Superior Court's Office.

Under Rule 10 of the North Carolina Rules of Appellate Procedure, "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C.R. App. P. 10(b)(1) (2006). Defendants failed to present a timely request, objection, or motion on this assignment of error. This assignment of error is properly dismissed.

### IV.  Sentencing Error

The majority's opinion holds the trial court erred in sentencing defendants under a Class 3, Level III misdemeanor. I disagree.

N.C. Gen. Stat. § 14-4(a) (2005) provides:

Except as provided in subsection (b), if any person shall violate an ordinance of a county, city, [or] town . . . he shall be guilty of a Class 3 misdemeanor and shall be fined not more than five hun-

dred dollars ($500.00). No fine shall exceed fifty dollars ($50.00) unless the ordinance expressly states that the maximum fine is greater than fifty dollars ($50.00).

N.C. Gen. Stat. § 15A-1340.23(c) (2005) provides, "*Unless otherwise provided for a specific offense,* the authorized punishment for each class of offense and prior conviction level is as specified in the chart below." (Emphasis supplied). This statute lists the punishment for a Class 3, Level III misdemeanor as one to twenty days imprisonment.

The ordinance specifically provides:

the violation of any provision of this ordinance shall constitute a misdemeanor and shall be punished by a fine up to five hundred dollars ($500.00) or imprisonment of thirty (30) days or both fine and imprisonment. Each day on which any violation of this Ordinance shall continue shall constitute a separate and distinct violation and offense.

N.C. Gen. Stat. § 15A-1340.23(c) expressly authorizes a different punishment to be prescribed for a specific offense. Beaufort County may establish greater punishment with a specific offense in compliance with N.C. Gen. Stat. § 14-4(a). Pursuant to N.C. Gen. Stat. § 14-4(a), the jury may find defendants guilty of a Class 3 misdemeanor. The ordinance properly states the jury may find defendants guilty of a Class 3 misdemeanor and be sentenced to imprisonment for a maximum of thirty days. The trial court did not err in sentencing defendants as a Class 3, Level 3 misdemeanor. This assignment of error is properly overruled.

## V. Imposing Fines

Defendants contend the trial court erred in imposing fines of $500.00 for each conviction. As previously noted, N.C. Gen. Stat. § 14-4(a) authorizes Beaufort County to impose fines. The County expressly adopted a fine, up to a maximum of $500.00, for each violation of the ordinance. The ordinance stated that each offense shall "constitute a separate and distinct violation." The trial court did not err in imposing the maximum fines of five hundred dollars for each conviction under the ordinance. This assignment of error is properly overruled.

## VI. Conclusion

The majority's opinion correctly holds that the ordinance is narrowly drawn and is not over broad, but erroneously holds the ordi-

nance to be facially or *per se* unconstitutional. Defendants failed to properly preserve and present an argument challenging the constitutionality of the ordinance as applied to them. Defendants also failed to preserve for appeal and properly assign error to the validity of the ordinance.

The record on appeal does not contain defendants' application for or the County's denial of the special event permit. Defendants failed to appeal from that denial or to seek subsequent special event permits to allow relief from the provisions of the ordinance. Defendants also failed to properly preserve any objection, assign error to, or present an argument on appeal that the ordinance is invalid because it was not kept on file in the Clerk's Office.

The trial court was lawfully authorized to impose the sentence and fine under N.C. Gen. Stat. § 14-4(a), N.C. Gen. Stat. § 15A-1340.23(c), and the ordinance. These assignments of error are properly dismissed or overruled. Defendants received a fair trial free from prejudicial errors they preserved, assigned, and argued and their convictions should be affirmed. I respectfully dissent.